BIG RIVERS RURAL ELECTRIC COOP-ERATIVE CORPORATION, Appellant,

v.

BROWNS VALLEY LAND COMPANY. Appellee.

Court of Appeals of Kentucky.

March 22, 1968.

Ridley M. Sandidge, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellant.

Joseph H. McKinley, Garland W. Howard, McKinley & Howard, Owensboro, for appellee.

CLAY, Commissioner.

Appellant condemned an easement for the erection of a transmission line across the farm of appellee. This is an appeal from a jury award of $8,850, on the grounds that the verdict was excessive and not sustained by sufficient evidence of probative value.

The tract contains 923 acres, and its present and prospective future use is for farming purposes. The easement is 125 feet in width and 4,787 feet in length, traversing the tract at roughly midpoint. The transmission line consists of five wires supported by seven dual-pole settings. The landowner has the right to use the land encompassed by the easement except for the erection of buildings.

The before value appraisals ranged between $230,500 and $400,000, and the jury found such value to be $270,000. The principal controversy relates to the after value of the land subjected to the easement. Appellant's experts, who had made a special investigation of this particular subject, testified that the after value was not substantially affected, the highest difference being estimated at $1,000. On the other hand, the landowner's witnesses testified to a difference in value ranging from $13,830 to $18,440. It is appellant's contention that the after value appraisals of the landowner's witnesses, which they were unable to justify, resulted in an exorbitant differential between the before and after values, and that this evidence, lacking probative value, led the jury to make an excessive award.

The land involved is a large tract, substantially level, which is well suited to the growing of such "row crops" as corn and soy beans. The jury could properly find, as it did, that the farm land without the easement had a value of $293 per acre. It is apparent from the evidence that the existence of the transmission line will interfere with the farming operations in a minimal degree. (The tract was already traversed by the transmission line of another power company.) The land actually occupied by the poles is about one-eighth of an acre and the entire easement area is approximately 14 acres.

Since the ground in the easement area not occupied by the poles remains useable for farming purposes, it was the opinion of the expert witnesses testifying for appellant that the existence of the transmission line over a large tract such as this had no appreciable affect upon *the market value of the property*. While there was testimony that "farmers don't like those things", the question is the extent to which the encumbrance of the easement depreciated the farm's market value.

The witnesses for the landowner testified that such a line would substantially depreciate the value of the property. Their method of appraisal is attacked by appellant. They simply gave the before and after value figures without explaining the nature of or the reason for substantial depreciation. It was not shown why the land outside the easement would be depreciated in value. They did not explain in what respect the existence of such a transmission line on a large tract such as this, used for farming purposes, would impair the sale value of the entire tract or any part thereof. Yet we have held in a case of this character that a "reasonable basis" should be given to support estimates of damage caused by a transmission line. Salt River Rural Electric Co-op. Corp. v. Thurman, Ky., 275 S.W.2d 780.

An examination of the landowner's witnesses' damage estimates (based on after value) developed a discrepancy they were unable to explain, though asked concerning it. For example, the sole stockholder of the appellee company testified the tract (before the easement) had a value of $320 an acre. With the encumbrance, he depreciated the value $16,000. Since only 14 acres were immediately affected by the easement and no reason was given why the market value of the other land would be adversely affected, this in effect was giving the encumbered land a loss value of approximately $1100 an acre. Even if the 14 acres had been taken in fee, which they were not, the witness' own figures would show such

a material inconsistency as to require explanation.[1]

■ It is true the value of the land actually taken (even assuming it was taken in fee) would not necessarily limit the amount of compensation to which a landowner is justly entitled. His remaining land may be depreciated in value by the taking. However, we are unable to find in this record any substantial evidence that the value of the landowner's two large tracts lying on each side of the easement were in any way impaired or depreciated by reason of its existence.

■ The difference in value figures given by the landowner's witnesses are arbitrary figures. All appraisal figures of an expert are in a certain sense arbitrary, but to have probative value they should have some reasonable relationship to market value factors. Such factors may be matters of common knowledge, or may be apparent, or may be known or acknowledged in real estate transactions. They need not be necessarily referred to by the witness. However, when the figures of a witness on their face are extravagant or show a substantial discrepancy, specific supporting facts are necessary to give those figures full probative value. East Kentucky Rural Electric Co-op. Corp. v. Phelps, Ky., 275 S.W.2d 592; Kentucky Utilities Company v. Jett, Ky., 391 S.W.2d 677.

■ It can be argued that the verdict is sustainable because the jury substantially discounted the damage estimates of the landowner's witnesses.[2] In this case the jury found a difference in value of $8,850 rather than $16,000. However this verdict far exceeds the highest per-acre valuation of any witness if we treated the easement as taking in fee the 14 acres which it encompasses. Since the easement takes a much lesser estate, the verdict does not rest on an adequately proven depreciated market value. In our opinion it was based on evidence lacking sufficient probative value to sustain it and is patently excessive. See Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472; Commonwealth, Dept. of Highways v. Holbrook, Ky., 390 S.W.2d 897.

The conclusion we have reached is not inconsistent with our decision in Big Rivers Rural Electric Cooperative Corporation v. Royer (rendered March 8, 1968), wherein a somewhat similar easement was involved. Two distinguishing features are (1) the nature and potential use of the property involved, and (2) the character of the expert testimony.

■ Appellant contends we should direct the entry of a judgment based on the highest difference in value figure presented by its witnesses, but the landowner is entitled to have the jury fix the damages.

The judgment is reversed, with directions to grant appellant a new trial.

WILLIAMS, C. J., and MILLIKEN, MONTGOMERY, PALMORE and STEINFELD, JJ., concur.

EDWARD P. HILL and OSBORNE, JJ., dissent.

1. The damage estimates of the landowner's other witnesses show a similar discrepancy. Whereas they valued the whole farm on a $250 to $433 an acre basis, the depreciated value, applied to 14 acres, would come to $987 to $1317 an acre.

2. It is unfortunate that so many condemnation cases resolve themselves into a game in which the parties' experts oppose each other with such apparently extravagant underestimations and overestimations of depreciated value that the jury cannot rest its verdict on particular evidence, but must in effect make an independent appraisal. It would be refreshing to see a case in which the expert testimony for one side or the other was so consistent and of such a fair and convincing character that the jury would accept it.